10 CV 3007

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SIDNEY and ELAINE GLICK, Individually and On Behalf of All Others Similarly Situated, | )  **CIVIL ACTION NO.** |
| | ) |
| Plaintiffs, | ) |
| | )  **CLASS ACTION COMPLAINT** |
| vs. | ) |
| | ) |
| FUQI INTERNATIONAL, INC., YU KWAI CHONG, and CHING WAN WONG, | ) |
| | )  **JURY TRIAL DEMANDED** |
| Defendants. | ) |

RECEIVED

APR 07 2010

U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, by and through their attorneys, allege the following upon information and

belief, except as to those allegations concerning plaintiffs, which are alleged upon personal

knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's

investigation, which includes: (a) review of United States Securities and Exchange Commission

("SEC") filings made by Fuqi International, Inc. ("FUQI" or the "Company"); (b) review and

analysis of press releases and other public statements issued by the Company; and (c) review of

other publicly available information concerning the Company. Plaintiffs believe that substantial

additional evidentiary support will exist for the allegations set forth herein after a reasonable

opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    Sidney and Elaine Glick (collectively, the "Plaintiffs"), bring this action on their

own behalf and on behalf of all persons or entities who purchased FUQI between May 15, 2009

and March 16, 2010 (the "Class Period"), under the Securities and Exchange Act of 1934 (the

"Exchange Act")

2.     FUQI is a leading designer of high quality precious metal jewelry in China, developing, promoting, and selling a broad range of products in the large and rapidly expanding Chinese luxury goods market

3.     On March 16, 2010, FUQI issued a press release announcing its preliminary financial results for the fourth quarter ended December 31, 2009 and a delay in the filing of its Annual Report on Form 10-K, identifying certain errors related to the accounting of the Company's inventory and cost of sales and that the result of the accounting errors was expected to have a material impact on the Company's previously issued quarterly financial statements for the first three quarters of 2009

4.     The Company announced that as a result of these accounting deficiencies, the cost of sales for each of these periods was understated, and that gross profit and net income were overstated accordingly   Based on the Company's latest estimate, the possible overstatement is expected to be approximately 12%-14% and 21%-23% for the first quarter and the second quarter of 2009, respectively, and the earnings per share included in the previously issued financial statements for the nine months ended September 30, 2009 were overstated by approximately $0.15-$0.19 per share.

5.     Following the Company's disclosure on March 16, 2010, shares of FUQI decreased $7.10 per share, from $19 per share at the close of trading on March 16, 2010 to $11.90 per share at the close of trading on March 17, 2010, a decline of $37.37%, on extremely heavy volume of 17.3 million shares.

6.     Throughout the Class period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

2

operations and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that the Company's cost of sales for the first three quarters of 2009 were understated during the Class Period; (ii) as a result of the understatement of cost of sales, gross profit and net income were accordingly overstated during the Class Period; (iii) that the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (iv) that the Company lacked adequate internal and financial controls; and (v) that, as a result of the above, the Company's financial statements during the Class Period were materially false and misleading at all relevant times.

7.    As a result of Defendants' wrongful acts and omissions, and the steep decline in the share price of FUQI's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## II.    JURISDICTION AND VENUE

8.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa)

10.    Venue is proper in this Judicial District pursuant to 28 U.S.C §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.

11.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstates commerce, including

3

the United States mails, interstate telephone communications, and the facilities of a national securities exchange.

## III.  THE PARTIES

12    Plaintiffs purchased shares of FUQI common stock and suffered damages as a result of Defendants' violations of the federal securities laws through the false and/or misleading statements and/or material omissions alleged herein. Plaintiffs detail their purchases of FUQI common stock on the Certification attached hereto and incorporated herein by reference.

13    Defendant FUQI operates through its wholly-owned subsidiary, Fuqi International Holdings Co , Ltd , a British Virgin Islands corporation, and its wholly-owned subsidiary, Shenzhen Fuqi Jewelry Co , Ltd , a company established under the laws of China. FUQI effected a reverse merger transaction in November 2006 and subsequently reincorporated in Delaware on December 8, 2006. FUQI maintains its principal executive offices at 5/F., Block 1, Shi Hua Industrial Zone, Cui Zhu Road North, Shenzhen, 518019, People's Republic of China.

14.    Defendant Yu Kwai Chong ("Chong") is the principal founder of FUQI and has served as President, Chief Executive Officer and Chairman of the Board of Directors since April 2001

15    Defendant Ching Wan Wong ("Wong") has served as FUQI's Chief Financial Officer since January 2004

16.    Defendants Chong and Wong are collectively referred to as the "Individual Defendants." The Individual Defendants, because of their management position with the Company, had the power and authority to control the contents of FUQI's SEC reports and

4

filings, press releases and presentations to securities analysts, and to cause FUQI to engage in the unlawful conduct complained of herein.

## IV.    CLASS ACTION ALLEGATIONS

17.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons and entities who purchased FUQI common stock on the open market between May 15, 2009 - the first day of trading after FUQI announced its financial results for the first quarter ended March 31, 2009 - through March 16, 2010, inclusive, and who were damaged thereby (the "Class"). Excluded from the class are: Defendants herein; members of the families of each of the Individual Defendants; any parent, subsidiary, affiliate, partner, officer, executive or director or any defendant; any entity in which any such excluded person has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded person or entity.

18.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiffs at the present time and can only be ascertained from books and records maintained by FUQI and/or its agent(s), plaintiffs believe that Class members number in the hundreds of thousands. As of November 9, 2009, the Company had 27,628,656 shares of common stock issued and outstanding which traded on the NASDAQ National Market, an efficient market. During the Class Period, FUQI was followed and reported on by analysts at numerous securities firms, including Oppenheimer, Merriman Curham Ford and Roth Capital.

19.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

(b)    whether the documents, reports, filings, releases, and statements disseminated to the Class by defendants during the Class Period misrepresented material facts about the business, performance, and financial condition of FUQI;

(c)    whether the market price of FUQI common stock during the Class Period was artificially inflated due to the misrepresentations complained of herein; and

(d)    whether plaintiffs and the other members of the Class have sustained damages and, if so, the appropriate measure thereof;

20.    Plaintiffs and the other named plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained competent counsel experienced in class and securities litigation and intend to prosecute this action vigorously. Plaintiffs are members of the Class and do not have interests antagonistic to, or in conflict with, the other members of the Class.

21.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class purchased or acquired FUQI common stock during the Class Period at artificially inflated prices and have sustained damages arising out of the wrongful course of conduct alleged herein.

6

22.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## V.    FACTUAL ALLEGATIONS

### A.    General Background

23.    FUQI is a leading designer of high quality precious metal jewelry in China, developing, promoting, and selling a broad range of products to the Chinese luxury goods market. The Company operates in two divisions: (i) wholesale of jewelry products and (ii) retail jewelry products. The wholesale division is responsible for designing, manufacturing, selling and marketing its products to other wholesalers and distributors. Since May 2007, the Company has been expanding its retail jewelry strategy. This retail strategy focuses on customer segmentation with emphasis on expansion of its product range to meet differing customer requirements in the various regions.

### B.    The False and Misleading Statements
### Issued During the Class Period by FUQI

24.    On May 15, 2009, the beginning of the Class Period, FUQI issued a press release entitled, "FUQI International, Inc. Reports First Quarter 2009 Financial Results" announcing its earning for the quarter ended March 31, 2009, which stated, in part:

> SHENZHEN, China, May 15 /PRNewswire-Asia-FirstCall/ -- FUQI International, Inc. (NASDAQ:FUQI) today announced financial results for the first quarter ended March 31, 2009.

7

"We are excited to continue posting strong financial results in the first quarter of 2009 ...

\*\*\*

Gross profit in the first quarter of 2009 increased 105% to $18.1 million from $8.8 million for the same period in the prior year. Gross profit margin for the first quarter of 2009 increased 510 basis points to 16.5% compared to 11.4% in the same period in the prior year. The improvement in gross margin was primarily due to an increase of product segments, benefit from gradually rising precious metal prices and a stable increase in sales of Fuqi's and Temix's retail outlets. The Company continues to prudently grow its retail business to capitalize on higher retail margins, which has occurred in the first quarter of 2009.

\*\*\*

Net Income for the first quarter of 2009 increased 52% to $9.7 million, or $0.45 per diluted share, compared to $6.4 million, or $0.31 per diluted share in the same period of the prior year.

\*\*\*

2009 Financial Outlook

Mr. Chong continued, "Our keen financial management has allowed us to post this impressive growth, and enabled us to begin to distinguish ourselves from the competition. We plan to continue to conservatively manage our balance sheet so that we are always ready to capitalize upon profitable opportunities in the marketplace."

\*\*\*

Net income in the second quarter is expected to be in the range of $5.9 - $6.9 million, or $0.27 - $0.32 per diluted share, based on a weighted average share count of 21.5 million shares.

For the full year 2009, the Company ... anticipates net income of approximately $32.0 - $35.0 million, or diluted EPS of $1.49 - $1.63, based on a weighted average share count of 21.7 million shares

8

25.    On May 15, 2010, Bloomberg.com reported that FUQI gained 17 percent, the most in six months after reporting first-quarter profit of 45 cents a share, beating the average analyst estimate by 34 percent

26.    On May15, 2009, FUQI also filed with the SEC its Form 10-Q for the 2009 fiscal first quarter ("Q1 Form 10-Q") FUQI's Q1 Form 10-Q signed by the Individual Defendants reaffirmed the Company's financial results announced through the press release that day, representing that:

> In the opinion of the management, these condensed consolidated financial statements reflect all adjustments which are of a normal recurring nature and which are necessary to present fairly the financial position of Fuqi as of March 31, 2009 and the results of operations and the cash flows for the three-month periods ended March 31, 2009 and 2008.

***

### Cost of Sales

> Cost of sales is mainly comprised of costs of raw materials, primarily gold, platinum and diamonds, in addition to direct manufacturing costs, factory overhead and processing fees  Cost of sales for the three months ended March 31, 2009 increased to $91 3 million, an increase of $22.5 million, or 32.7% from $68.8 million for the same period in 2008
>
> Wholesale and distribution cost of sales increased by $14.9 million or 22%, in the first quarter of 2009 to $82.7 million form $67.8 million for the first quarter of 2008  The increase in cost of sales, which was consistent with the increase in net sales, was primarily due to an increase in the cost of raw materials, which resulted form the increase in both sales volume and the general increase in direct labor
>
> Cost of retail sales for the three months ended March 31, 2009 increased by $7 7 million to $8 7 million form approximately $0 95 million for the same period in 2008  The increase in cost of retail sales for the three months ended March 31, 2009 was primarily due to the increase in sales volume

### Gross Profit

Gross profit for the three months ended March 31, 2009 increased to $18.1 million, an increase of $9.3 million, or 106% from $8.8 million for the comparable period in 2008. Gross profit margin increased to 16.5% for the three months ended March 31, 2009, compared to 11.4% for the same period in 2008. The increase in profit margin was mainly attributable to an increase of product segments, an expansion in retail sales, which resulted from an increase in brand awareness and an opening additional jewelry counters in locations and acquisitions of Temix's 50 retail stores in 2008.

***

### Net Income

Net income increased to $9.7 million for the three months ended March 31, 2009 from $6.4 million for the same period of the prior year, an increase of 51.6%.

27.    In addition, Q1 Form 10-Q also included the following representations relating to

the Company's disclosure controls and procedures:

### Disclosure Controls and Procedures

Disclosure controls and procedures refer to controls and other procedures designed to ensure that information required to be disclosed in the reports we file or submit under the Securities Exchange Act is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the SEC and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure.

As required by Rule 13a-15(b) under the Securities Exchange Act, our management has carried out an evaluation, with the participation and under the supervision of our Chief Executive Officer and our Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures as of March 31, 2009. As discussed in more detail below, our Chief Executive Officer and our Chief Financial Officer concluded that our disclosure controls and procedures were ineffective as of March 31, 2009, due to the material weaknesses that we identified in internal controls over financial reporting, specifically related to period-end closing process and revenue recognition in improper periods.

1.  *We did not maintain effective control over the period-end closing
    process* Due to the insufficient number of qualified resources, we were
    unable to timely and accurately complete our work needed to close our
    books and prepare financial statements in accordance with accounting
    principles generally accepted in the United States of America for period
    covered by this report. In addition, this control deficiency could result in
    a material misstatement to annual or interim financial statements that
    would not be prevented or detected.

2.  *We did not maintain effective control over the revenue cycle with
    revenue recognition.* We did not properly perform and follow the control
    procedures set forth in the revenue cycle. This control deficiency resulted
    in significant amounts of sales not being recorded in the proper periods.

**Remediation Measures of Material Weaknesses**

We have implemented the following measures in 2009 as indicated:

1.  We have increased efforts to enforce internal control procedures. We
have started restructuring our China financial department and clarifying the
responsibilities of key personnel in order to increase communications and
accountability. Under the new procedures, non-routine transactions are identified
and presented to senior financial management when discovered to ensure proper
accounting treatment. We will seek opportunities to provide additional technical
resources in order to improve the quality of the reviews of underlying financial
information related to certain significant transactions. We will continue to review
and assess the effectiveness of the restructuring and make modifications
accordingly in an effort to improve the effectiveness of our control procedures.

2  We have hired and will continue to hire additional qualified financial
personnel for the accounting department to further strengthen our China financial
reporting function. In 2009, we hired 4 additional personnel in our accounting
and finance department

3  We will continue to evaluate our existing staff and make modifications as
necessary, in addition to providing additional training on accounting principles
and internal control procedures for our existing staff. We have also required all
personnel in our China financial department to obtain additional accounting
certifications.

4.  We continually review and improve our standardization of our monthly
and quarterly data collection, analysis, and reconciliation procedures. To further
improve the timeliness of data collection, we are selecting and will install new
point of sale systems and enterprise resource planning systems for our wholesale

and retail operations. **We have also implemented a variety of manual review procedures, such as an extensive review of journal entry postings into the accounting system, a thorough review of account reconciliation, and a detailed review by our U.S. reporting team of the trial balance from our China entity, to ensure the completeness and accuracy of the underlying financial information.**

5.    We have increased the level of communication and interaction among sales department, production department, PRC accounting team and other external advisors. In addition, our chief Financial Officer and US GAAP team are becoming increasingly involved with the financial accounting and reporting process in China and are monitoring such processes. For example, we will relocate a portion of the US GAAP team from our Hong Kong office to our Shenzhen offices to strengthen the local accounting and reporting processes.

6.    **We are in the process of expanding the internal control functions and honing related policies and procedures.** As referenced above, we hired a qualified and experienced Internal Audit Manager, who commenced work in January 2009. We also plan to allocate and transfer additional resources to the internal audit department for the purpose of enhancing the internal audit function.

**Changes in Internal Controls over Financial Reporting**

Due to the implementation of the remedial measures described above, in addition to the designing, planning, and integration of the internal controls over financial reporting for Temix, there were changes in our internal controls over financial reporting during the first quarter of fiscal 2009 that have materially affected, or are reasonably likely to materially affect our internal control over financial reporting. (Emphasis added).

28    Further, the Q1 Form 10-Q contained certifications required by Sarbanes-Oxley,

signed by the Individual Defendants Chong and Wong, who certified:

1.    I have reviewed this report on Form 10-Q of Fuqi International, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the

12

financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

         a.    designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

         b    designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

         c.    evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

         d.    disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

         a.    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b.      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

29.     The representations concerning the Company's disclosure controls and procedures, and the Individual Defendants' certifications, were repeated in all material respects in the Forms 10-Q that FUQI filed with the SEC throughout the Class Period.

30.     On July 22, 2009, FUQI issued a press release entitled, "FUQI International Comments on Outlook for Second Quarter 2009 Financial Results" which stated, in part:

> SHENZHEN, China, July 22 /PRNewswire-Asia-FirstCall/ -- FUQI International, Inc. (Nasdaq: FUQI), a leading designer of high quality precious metal jewelry in China, today announced that based on its preliminary review of its financial results for the three months ended June 30, 2009, the Company believes that its second quarter earnings per share will be at or higher than the high end of its previously released forecast of $0.27 to $0.32 per diluted share, based on a weighted average share count of approximately 21.7 million shares. The Company plans to release its final second quarter results of operations in early August.

31.     On August 6, 2009, FUQI issued a press release entitled, "FUQI International, Inc. Reports Second Quarter 2009 Financial Results" which stated, in part:

> SHENZHEN, China, Aug. 6 /PRNewswire-Asia-FirstCall/ -- FUQI International, Inc. (Nasdaq: FUQI) today announced financial results for the second quarter ended June 30, 2009.
>
> "I am pleased to report that, our team has once again delivered strong second quarter results..." commented Mr. Yu Kwai Chong, CEO and Chairman of Fuqi International.
>
> ***
>
> Gross profit in the second quarter of 2009 increased 145.1% to $17.4 million from $7.1 million for the same period in the prior year. Gross profit margin for the second quarter of 2009 increased 660 basis points to 17.2% compared to 10.6% in the same period in the prior year. The improvement in gross margin was primarily due to an increase of product segments, an expansion in retail sales, which resulted from an increase in brand awareness, and opening additional jewelry

counters as well as our acquisition of Temix's 50 retail counters/stores in 2008.
Second quarter wholesale gross margin increased 510 basis points to 15.7%
compared to 10.6% in the prior year period while retail gross margin increased
significantly to 33.7% in the second quarter of 2009 compared to 7.4% in the
second quarter of the prior year.

\*\*\*

Net income for the second quarter of 2009 increased 86.8% to $9.9 million, or
$0.45 per diluted share, compared to $5.3 million, or $0.25 per diluted share in
the same period of the prior year.

\*\*\*

2009 Financial Outlook

Mr. Chong continued, "As a result of the successful offering as well as market
opportunities, we are raising our revenue and net income guidance for the
remainder of this year. We believe that we have laid the foundation to
successfully build a fully-integrated wholesale and retail operation that can
capture a sizeable market share in the growing Chinese middle class market. We
are enthusiastic about our future growth prospects, and believe we have the vision
to build the leading jewelry provider in China."

\*\*\*

Net income in the third quarter is expected to be in the range of $10.1 - $11.1 million, or
$0.40 - $0.44 per diluted share, based on a weighted average share count of
approximately 25.3 million shares. The share count will partially reflect the 5.58 million
shares issued in the stock offering that closed on August 5, 2009.

\*\*\*

Net income in the fourth quarter is expected to be in the range of $14.4 - $16.2
million, or $0.52 - $0.59 per diluted share, based on a weighted average share
count of approximately 27.6 million shares

\*\*\*

The Company also anticipates net income of approximately $44.0 - $46.8 million,
or diluted EPS of $1.83 - $1.94, based on a weighted average share count of
approximately 24.1 million shares, reflecting the partial-year impact of the shares
issued in our recent offering.

15

32      On August 6, 2009, FUQI also filed with the SEC its Form 10-Q for the quarter

ended June 30, 2009 ("Q2 Form 10-Q"). FUQI's Q2 Form 10-Q signed by the Individual

Defendants reaffirmed the Company's financial results announced through the press release that

day, representing that:

> In the opinion of the management, these condensed consolidated financial
> statements reflect all adjustments which are of a normal recurring nature and
> which are necessary to present fairly the financial position of Fuqi as of June 30,
> 2009 and the results of operations for the three and six months ended June 30,
> 2009 and 2008, and the cash flows for the six months ended June 30, 2009 and
> 2008
>
> ***
>
> Three Months Ended June 30, 2009 and 2008
>
> ***
>
> Cost of sales
>
> Cost of sales is mainly comprised of costs of raw materials, primarily gold,
> platinum and diamonds, in addition to direct manufacturing costs, factory
> overhead and processing fees. Cost of sales for the three months ended June 30,
> 2009 increased to $83.5 million, an increase of $23.7 million, or 39.7%, from
> $59.8 million for the same period in 2008.
>
> Wholesale and distribution cost of sales increased by $18.9 million, or 31.9%, in
> the second quarter of 2009 to $78.0 million from $59.1 million for the second
> quarter of 2008. The increase in cost of sales, which was consistent with the
> increase in net sales, was primarily due to an increase in the cost of raw materials,
> which resulted from the increase in both sales volume and the general increase in
> direct labor
> Cost of retail sales for the three months ended June 30, 2009 increased by $4.8
> million to $5.5 million from approximately $691,000 for the same period in 2008.
> The increase in cost of retail sales for the three months ended June 30, 2009 was
> primarily due to the increase in sales volume.
>
> Gross profit
>
> Gross profit for the three months ended June 30, 2009 increased to $17.4 million,
> an increase of $10.3 million, or 145%, from $7.1 million for the comparable

period in 2008. Gross profit margin increased to 17.2% for the three months ended June 30, 2009, compared to 10.6% for the same period in 2008. The increase in profit margin was mainly attributable to an increase of product segments and an expansion in retail sales, which resulted from an increase in brand awareness, an opening of additional jewelry counters, and acquisition of Temix's 50 retail stores in August 2008.

***

Net income

Net income increased to $9.9 million for the three months ended June 30, 2009 from $5.3 million for the same period of the prior year, an increase of 86.8%.

Six Months Ended June 30, 2009 and 2008

***

Cost of sales for the six months ended June 30, 2009 increased to $174.8 million, an increase of $46.3 million, or 36.0%, from $128.5 million for the same period in 2008.

Wholesale and distribution cost of sales increased by $33.7 million, or 26.6%, in the first six months of 2009 to $160.6 million from $126.9 million for the first six months of 2008. The increase in cost of sales, which was consistent with the increase in net sales, was primarily due to an increase in the cost of raw materials, which resulted from the increase in both sales volume and the general increase in direct labor.

Cost of retail sales for the six months ended June 30, 2009 increased by $12.6 million to $14.2 million from approximately $1.6 million for the same period in 2008. The increase in cost of retail sales for the six months ended June 30, 2009 was primarily due to the increase in sales volume.

Gross profit

Gross profit for the six months ended June 30, 2009 increased to $35.4 million, an increase of $19.5 million, or 123%, from $15.9 million for the comparable period in 2008. Gross profit margin increased to 16.8% for the six months ended June 30, 2009, compared to 11.0% for the same period in 2008. The increase in profit margin was mainly attributable to an increase of product segments and an expansion in retail sales, which resulted from an increase in brand awareness, an opening of additional jewelry counters, and acquisition of Temix's 50 retail stores in August 2008.

17

*\*\**

Net income

Net income increased to $19.5 million for the six months ended June 30, 2009 from $11.6 million for the same period of the prior year, an increase of 68.1%.

33.     On November 9, 2009, FUQI issued a press release entitled, "FUQI International,

Inc. Reports Third Quarter 2009 Financial Results" which stated, in part:

SHENZHEN, China, Nov. 9 /PRNewswire-Asia/ -- FUQI International, Inc. (Nasdaq: FUQI) today announced financial results for the third quarter ended September 30, 2009.

"I am pleased to report that, our team has once again delivered strong third quarter results, ..." commented Mr. Yu Kwai Chong, CEO and Chairman of Fuqi International

*\*\**

Gross profit in the third quarter of 2009 increased 172.0% to $29.9 million from $11.0 million for the same period in the prior year. Gross profit margin for the third quarter of 2009 increased to 23.5% compared to 11.7% in the same period in the prior year. The improvement in gross margin was primarily due to higher wholesale margins resulting from several sizeable ODM orders fulfilled during the third quarter. Third quarter wholesale gross margin increased 12.8% to 23.6% compared to 10.8% in the prior year period while retail gross margin was 22.6% in the third quarter of 2009 compared to 38.0% in the third quarter of the prior year.

*\*\**

Net income for the third quarter of 2009 increased 187.9% to $18.8 million, or $0.73 per diluted share, compared to $6.5 million, or $0.31 per diluted share in the same period of the prior year

*\*\**

Mr. Chong continued, "The third quarter came in stronger than we expected, considering the long National Holiday week and the dearth of gift-giving holidays during the quarter. Nevertheless, our ability to generate strong revenue and

earnings growth during a seasonally slow period is extremely encouraging for our management team, as we look towards our goals for the future. As a result of the stronger-than-expected third quarter performance, we will be raising our revenue and net income guidance for the fourth quarter and full year. We believe that FUQI has laid the plans for strong continued growth in the wholesale and retail markets, and our branding, marketing and distribution plans will enable us to leverage the foundation we have built for more market penetration. We are excited about the coming quarters and the plans we have in place, and look forward to providing our shareholders with optimal value."

\*\*\*

Net income in the fourth quarter is expected to be in the range of $15.2-$16.6 million, or $0.55-$0.60 per diluted share, based on a weighted average share count of approximately 27.6 million shares.

\*\*\*

The Company also anticipates net income of approximately $53.5-$54.9 million, or diluted EPS of $2.21-$2.27, based on a weighted average share count of approximately 24.2 million shares, reflecting the partial-year impact of the shares issued in our recent offering.

34.     On November 9, 2009, FUQI also filed with the SEC its form 10-Q for the quarter ended September 30, 2009 ("Q3 Form 10-Q"). FUQI's Q3 Form 10-Q signed by the Individual Defendants reaffirmed the Company's financial results announced through the press release that day, representing that:

In the opinion of the management, these condensed consolidated financial statements reflect all adjustments which are of a normal recurring nature and which are necessary to present fairly the financial position of Fuqi as of September 30, 2009 and the results of operations for the three and nine months ended September 30, 2009 and 2008, and the cash flows for the nine months ended September 30, 2009 and 2008.

\*\*\*

Three Months Ended September 30, 2009 and 2008

\*\*\*

19

Cost of sales

Cost of sales is mainly comprised of costs of raw materials, primarily gold, platinum and diamonds, in addition to direct manufacturing costs, factory overhead and processing fees. Cost of sales for the three months ended September 30, 2009 increased to $97.3 million, an increase of $14.6 million, or 17.7%, from $82.7 million for the same period in 2008.

Wholesale and distribution cost of sales increased by $9.0 million, or 11.2%, in the third quarter of 2009 to $89.7 million, as compared to $80.7 million for the third quarter of 2008. The increase in the dollar amount of cost of sales was primarily due to an increase in the cost of raw materials, which resulted from the increase in both sales volume and the general increase in direct labor. As a percentage of net sales, the cost of sales increased at a slower rate than the increase in net sales primarily because of the higher contribution of ODM revenue.

Cost of retail sales for the three months ended September 30, 2009 increased by $5.5 million to $7.5 million, as compared to approximately $2.0 for the same period in 2008. The increase in the dollar amount of cost of retail sales for the three months ended September 30, 2009 was primarily due to the increase in sales volume.

Gross profit

Gross profit for the three months ended September 30, 2009 increased to $29.9 million, an increase of $18.9 million, or 172%, from $11.0 million for the comparable period in 2008. Gross profit margin increased to 23.5% for the three months ended September 30, 2009, compared to 11.7% for the same period in 2008. The increase in profit margin was mainly attributable to an opening of additional jewelry counters and shops and an increase of product segments. In addition, the launch of the hard gold series that attracted an increasing volume of subcontracting contracts contributed to 13.5% increase in the gross profit margin during the third quarter.

*\*\**

Net income

Net income increased to $18.8 million for the three months ended September 30, 2009 from $6.5 million for the same period of the prior year, an increase of 189%

*\*\**

20

Nine Months Ended September 30, 2009 and 2008

\*\*\*

Cost of sales

Cost of sales for the nine months ended September 30, 2009 increased to $272.0 million, an increase of $60.8 million, or 28.8%, from $211.2 million for the same period in 2008.

Wholesale and distribution cost of sales increased by $42.7 million, or 20.6%, in the first nine months of 2009 to $250.3 million, as compared to $207.6 million for the first nine months of 2008. The increase in dollar amount of cost of sales was primarily due to an increase in the cost of raw materials, which resulted from the increase in both sales volume and the general increase in direct labor. As a percentage of net sales, the cost of sales increased at a slower rate than the increase in net sales primarily because of the increase in ODM revenue.

Cost of retail sales for the nine months ended September 30, 2009 increased by $18.1 million to $21.7 million, as compared to approximately $3.6 for the same period in 2008. The increase in the dollar amount of cost of retail sales for the nine months ended September 30, 2009 was primarily due to the increase in sales volume.

Gross profit

Gross profit for the nine months ended September 30, 2009 increased to $65.3 million, an increase of $38.4 million, or 143%, from $26.9 million for the comparable period in 2008. Gross profit margin increased to 19.4% for the nine months ended September 30, 2009, compared to 11.3% for the same period in 2008. The increase in profit margin was mainly attributable to an increase of product segments and an expansion in retail sales, which resulted from an increase in brand awareness, an opening of additional jewelry counters and shops.

\*\*\*

Net income

Net income increased to $38.3 million for the nine months ended September 30, 2009 from $18.2 million for the same period of the prior year, an increase of 110%.

35.    The statements contained in ¶¶24-34, were materially false and/or misleading

when made because Defendants failed to disclose or indicate the following: (i) that the financial

statements did not fairly present the financial position of FUQI; (ii) that the Company's financial

statements were not prepared in accordance with GAAP; (iii) that the Company's cost of sales

was understated during the Class Period; (iv) that, as a result, the Company's gross profit and net

income for the period were accordingly overstated; (v) that the Company lacked adequate

internal and financial controls; and (vi) that, as a result of the above, the Company's financial

statements were materially false and misleading at all relevant times.

### C.    The Truth is Revealed

36.    On March 16, 2010, FUQI issued a press release entitled, "FUQI International

Provides Preliminary Fourth Quarter Financial Results; Announces Delay in Filing of Form 10-

K for 2009" which stated, in part:

> Shenzhen, China, March 16, 2010 – FUQI International, Inc. (Nasdaq GS: FUQI)
> today announced the preliminary release of fourth quarter 2009 unaudited
> financial results and that it will delay the release of its finalized fourth quarter and
> year ended 2009 financial results. The Company will also file an extension for the
> filing of its Form 10-K for 2009.
>
> The Company anticipates total revenue for the 2009 fourth quarter to be
> approximately $175-$180 million, compared to its original fourth quarter 2009
> forecast of $182.0-$191.0 million. Consolidated gross margin is expected to be in
> the 9%-10% range and diluted earnings per share is expected to be in the range of
> $0.24 to $0.28 per share compared to original diluted per share estimates of
> $0.55-$0.60.
>
> ***
>
> Also today, the Company announced that it has filed a Form 12b-25 with the
> Securities and Exchange Commission to delay the filing of its Annual Report on
> Form 10-K for the year ended December 31, 2009. The Company has been
> conducting an assessment of its internal controls as of December 31, 2009 in
> accordance with the Company's Sarbanes-Oxley Act compliance procedures.

Although the Company's assessment procedures are not yet complete, the Company believes that at least one of the identified deficiencies related to its 2009 Sarbanes-Oxley Section 404 compliance audit, thus far, constitutes a material weakness, including but not limited to the Company's period-end closing process as of December 31, 2009. The complete and final results of the Company's assessment of its internal controls will be disclosed in its Annual Report on Form 10-K for the year ended December 31, 2009.

As a result of the findings of the 2009 Sarbanes-Oxley Section 404 audit, thus far, the Company identified certain accounting errors that are expected to have a material impact on the previously issued quarterly financial statements for the first three quarters of 2009. Management and the accounting personnel require additional time to evaluate such effects on the previously filed quarterly financial statements of 2009. Because the review is still underway, the Company is unable to accurately estimate at this time the impacts on the Company's interim financial statements for the first three quarters of 2009. However, it is expected that as a result of the accounting errors, the cost of sales for each of the periods were understated and gross profit and net income, as a result, were accordingly overstated. Based on the Company's latest estimate, the earnings per share included in the previously issued financial statements for the nine months ended September 30, 2009 were overstated by approximately $0.15-$0.19 per share based on approximately 23.0 million weighted average number of shares for the nine months ended September 30, 2009. The foregoing estimate is based only upon preliminary information available to the Company as of the date of this press release, is subject to adjustment in connection with its ongoing review, and has not been audited by its independent registered public accounting firm. Due to the Company's ongoing internal analysis, the Company is currently unable to provide estimated results of operations for the year ended December 31, 2009. The Company will file its Annual Report on Form 10-K as soon as possible; however, there can be no assurance that the report will be filed within the extended 15 day deadline.

37.    In its Form 8-K filed on the same date, FUQI stated:

On March 11, 2010, the management and the Audit Committee of the Company concluded that the Company's previously issued financial statements:

     (i)    as of and for the three months ended March 31, 2009 as included in the Company's Quarterly Report on Form 10-Q filed with the Securities and Exchange Commission (the "Commission") on May 15, 2009 (the "First Quarter 10-Q"),

     (ii)   as of and for the three and six months ended June 30, 2009 as included in the Company's Quarterly Report on Form 10-Q filed

with the Commission on August 6, 2009 (the "Second Quarter 10-Q"), and

(iii)    as of and for the three and nine months ended September 30, 2009 as included in the Company's Quarterly Report on Form 10-Q filed with the Commission on November 9, 2009 (the "Third Quarter 10-Q", and collectively with the First Quarter 10-Q and the Second Quarter 10-Q, the "Filings"), should not be relied upon due to an error in the accounting of inventory and cost of sales.

The Company has been conducting an assessment of its internal controls as of December 31, 2009 in accordance with the Company's Sarbanes-Oxley Act compliance procedures. Although the Company's assessment procedures are not yet complete, the Company believes that at least one of the identified deficiencies related to its 2009 Sarbanes-Oxley Section 404 compliance audit, thus far, constitutes a material weakness, including but not limited to the Company's period-end closing process as of December 31, 2009. As a result of the findings of the 2009 Sarbanes-Oxley Section 404 audit, thus far, the Company identified certain errors related to the accounting of the Company's inventory and cost of sales

The result of the accounting errors are expected to have a material impact on the previously issued quarterly financial statements for the first three quarters of 2009, as contained in the Filings

*\*\**

However, based on the current status of the Company's evaluation, it is expected that the result of the accounting errors is that the cost of sales for each of the first and second quarters of 2009 were understated and gross profit and net income, as a result, were accordingly overstated in such periods. Based on the Company's latest estimate, the possible overstatement is currently anticipates to be approximately 12%-14% and 21%-23% for the first quarter and second quarter of 2009, respectively, and the earnings per share included in the previously issued financial statements for the nine months ended September 30, 2009 were overstated by approximately $0.15-$0.19 per share based on approximately 23.0 million weighed average number of shares for the nine months ended September 30, 2009. The foregoing estimates are based only upon preliminary information available to the Company as of the date of this Form 8-K, are subject to adjustments in connection with its ongoing review, and have not been audited by the Company's independent registered public accounting firm.

As a result of the foregoing, the Company's completion of its annual consolidated financial statements and required disclosure is being delayed pending the

Company's completion of analysis and evaluation of the potential errors on the previously issued quarterly financial statements for 2009  As indicated in the Company's Form 12b-25 filed with the Securities and Exchange Commission on March 16, 2010, the Company will file its Annual Report on Form 10-K as soon as possible and attempt to make such filing by the fifteenth calendar day following the prescribed due date for such report; however, there can be no assurance that the report will be filed within such period  As such time, the Company intends to file amendments to each of the Filings, as required, disclosing the effect of the accounting errors.

The Company's Audit Committee and management have discussed the facts and circumstances of the accounting errors and ongoing internal analysis with the Company's independent auditors

38.     Following the Company's disclosure on March 16, 2010, shares of FUQI

decreased $7 10 per share, from $19 per share at the close of trading on March 16, 2010 to

$11 90 per share at the close of trading on March 17, 2010, a decline of $37 37%, on extremely

heavy volume of 17.3 million shares traded.

39.     As a further result of the Company's disclosure FUQI was downgraded by

Oppenheimer, Merriman Curham Ford, and Roth Capital.

## VI.    FUQI'S VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC

40.     The Company's financial statements and the statements about the Company's

financial results were false and misleading, as such financial information was not prepared in

conformity with GAAP, nor was the financial information a fair presentation of the Company's

operations due to the Company's improper accounting for, and disclosure about its cost of sales,

in violation of GAAP rules.

41.     SEC Regulation S-X (17 C.F.R. § 210 4-01(a)(1)) provides that financial

statements filed with the SEC which are not prepared in compliance with GAAP are presumed to

be misleading and inaccurate, despite footnote or other disclosure  Regulation S-X requires that

25

interim financial statements must also comply with GAAP, with the exception that interim

financial statements need not include disclosures which would be duplicative of disclosures

accompanying annual financial statements   17 C.F.R. § 210.10-01(a). The responsibility for

preparing financial statements that conform to GAAP rests with corporate management as set

forth in § 110.02 of the AICPA Professional Standards:

> The financial statements are management's responsibility . . . Management is
> responsible for adopting sound accounting policies and for establishing and
> maintaining internal control that will, among other things, record, process,
> summarize, and report transactions (as well as events and conditions) consistent
> with management's assertions embodied in the financial statements. The entity's
> transactions and the related assets, liabilities, and equity are within the direct
> knowledge and control of management    . Thus, the fair presentation of financial
> statements in conformity with [GAAP] is an implicit and integral part of
> management's responsibility.

42     The fact that FUQI plans to restate its financial statements, and informed

investors that these financial statements should not be relied upon is an admission that they were

false and misleading when originally issued (APB No. 20, 7-13; SFAS No. 154, 25)

43.     Due to the misstatements set forth above, FUQI presented its financial results and

statements in a manner which violated GAAP, including the following fundamental accounting

principles:

(a)     The principle that interim financial reporting should be based upon
the same accounting principles and practices used to prepare annual financial
statements (APB No. 28, ¶10);

(b)     The principal that financial reporting should provide information
that is useful to present and potential investors and creditors and other users in
making rational investment, credit and similar decisions (FASB Statement of
Concepts No. 1, ¶34);

(c)    The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources (FASB Statement of Concepts No. 1, ¶40);

(d)    The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e)    The principle that financial reporting should provide information about an enterprise's financial performance during a period. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

(f)    The principle that financial reporting should be reliable in that it represents what it purports to represent. That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

(g)    The principle of completeness, which means that nothing is left out of the information that be necessary to insure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2, ¶79); and

(h)    The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97)

44    The adverse information concealed by Defendants during the Class period and detailed above was in violation of Item 303 Regulation S-K under the federal securities law (17 C.F.R. § 229.303).

## VII.  ADDITIONAL SCIENTER ALLEGATIONS

45.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding FUQI, their control over, and/or receipt and/or modification of FUQI's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning FUQI, participated in the fraudulent scheme alleged herein. The Individual Defendants specifically attested in the Company's Form 10-Q's throughout the Class Period to "review[ing] and improv[ing] [] standardization of [] monthly and quarterly data collection, analysis, and reconciliation procedures . implement[ing] a variety of manual review procedures, such as an extensive review of journal entry postings into the accounting system, a thorough review of account reconciliation . [and being] in the process of expanding the internal control functions and honing related policies and procedures" thereby imparting firsthand knowledge that the internal accounting of the Company was inadequate and rendering the statements made by the Defendants throughout the Class Period concerning FUQI's financial condition untruthful

46.    Defendants' were motivated  to materially misrepresent to the SEC and investors the true financial condition of the Company because the scheme to defraud deceived the

investing public regarding the Company's business, operations, management and intrinsic value of FUQI common stock allowing Defendants to artificially inflate the price of FUQI Common stock thereby enabling Defendants to register for sale with the SEC millions of shares of FUQI stock at artificially inflated prices and caused Plaintiffs and other members of the Class to purchase FUQI common stock at artificially inflated prices. On July 31, 2009 FUQI filed a Final Prospectus Supplement pursuant to Rule 424(b)(5) announcing the pricing of its offering to sell 4,855,000 shares at $21.50 per share for an aggregate initial offering price of up to $100 million. Including the over-allotment shares FUQI received net proceeds of approximately $112 million

## VIII.  LOSS CAUSATION AND ECONOMIC LOSS

47.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated FUQI common stock price and operated as a fraud or deceit on Class Period purchasers of FUQI common stock by misrepresenting the Company's financial results, thereby improperly inflating the Company's financial results for a period of approximately eight months and failing to timely disclose the Company's errors in accounting for the cost of sales during the Class Period and the material adverse effects these errors had on the Company's reported operating results. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of FUQI common stock fell precipitously as the prior artificial inflation was wiped out. As a result of their purchases of FUQI common stock during the Class Period, Plaintiffs and other Class members suffered economic loss, i e , damages, under the federal securities laws.

48      Defendants' false and misleading statements disseminated during the Class Period had the intended effect and indeed caused FUQI common stock to trade at artificially inflated levels throughout the Class Period

49      As a direct result of the disclosures detailed herein, the price of FUQI common stock fell precipitously. The precipitous decline of FUQI common stock based on the belated March 16, 2009 disclosures, resulted in the removal of the artificial inflation from the price of FUQI common stock during the Class Period.

50.     The precipitous decline in the price of FUQI common stock at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud being revealed to investors and to the market and the timing and magnitude of FUQI's stock price decline negates any inferences that the losses Plaintiffs and Class members suffered was caused by changed market conditions, macroeconomic or industry factors or even Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiffs and the other class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of FUQI common stock and the subsequent precipitous decline in the value of FUQI common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## IX.    APPLICABILITY OF PRESUMPTION OF RELIANCE
##         FRAUD ON THE MARKET DOCTRINE

51.     At all relevant times, the market for FUQI's common stock was an efficient market for the following reasons, among others:

(a)    FUQI common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market, under the symbol FUQI;

(b)    As a regulated issuer, FUQI filed periodic public reports with the SEC;

(c)    FUQI regularly communicated with public investors via established market communications mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    FUQI was followed by securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms  Each of these reports was publicly available and entered the public marketplace

(e)    Overwhelming evidence exists that material public statements of the Defendants immediately affected the price of FUQI's common stock.

52    As a result of the foregoing the market for FUQI securities promptly digested current information regarding FUQI from all publicly available sources and reflected such information in FUQI's stock price  Under these circumstances, all purchasers of FUQI common stock during the Class Period suffered similar injury through their purchase of Fuqi common stock at artificially inflated prices and a presumption of reliance applies.

31

X.    **NO SAFE HARBOR**

53.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to nay of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of FUQI who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder Against All Defendants

54    Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

55    Throughout the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) caused Plaintiffs and other members of the Class to purchase FUQI's securities at artificially inflated prices. In

furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56.   Throughout the Class Period, Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company, including its true financial condition, as specified herein.

57.   The Defendants employed devices, schemes, and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices, and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about the Company not misleading; and engaged in acts, practices and a course of business which operated as a fraud and deceit upon Plaintiffs and Class members in an effort to maintain artificially inflated market prices for FUQI common stock in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58.   Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans,

33

projections and/or reports; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading

59.    The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with knowing or reckless disregard for the truth in that they failed to ascertain and to disclose such facts  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly for the purpose and effect of concealing FUQI's true financial condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock  As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by recklessly refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.    As a result of the Defendants' fraudulent conduct as alleged herein, the prices at which FUQI common stock traded were artificially inflated throughout the class period. When Plaintiffs and other members of the Class purchased their FUQI common stock, the true value of the common stock was lower than the price actually paid by Plaintiffs and other members of the Class. In ignorance of the materially false and misleading statements and omissions complained

34

of herein, Plaintiffs and other members of the Class relied on such statements and/or the integrity

of the market, to their detriment, in purchasing their FUQI common stock at artificially inflated

prices during the Class Period

      61.    The misrepresentations and omissions complained of herein directly or

proximately caused, or were a substantial contributing cause of the loss sustained by Plaintiffs

and other members of the Class. Had Plaintiffs and other members of the class known the truth,

they would not have purchased FUQI's common stock, or, if they had acquired such common

stock during the Class Period, they would not have done so at the artificially inflated prices

which they paid.

      62.    By virtue of the foregoing, Defendants have violated Section 10(b) of the

Exchange Act, and Rule 10b-5 promulgated thereunder.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

      63.    Plaintiffs repeat and reallege each of the allegations set forth in the foregoing

paragraphs, as if fully set forth herein.

      64    The Individual Defendants acted as controlling persons of FUQI within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

positions, and their ownership and contractual rights, participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control, directly or indirectly, the decision-making of the Company,

including the content and dissemination of the various statements which plaintiffs contend are

false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.    Chong had the power and authority to cause FUQI to engage in the wrongful conduct complained of herein by virtue of his positions as Chief Executive Officer, President and Chairman of the Board of the Company. As CEO, President and Chairman, Chong participated in the day to day affairs of the corporation in numerous ways, including signing the Company's Forms 10-Q filed with the SEC

67.    Wong had the power and authority to cause FUQI to engage in the wrongful conduct complained of herein by virtue of his position as Chief Financing Officer of the Company. As CFO, Wong participated in the day to day affairs of the corporation in numerous ways including, including signing the Company's Forms 10-Q filed with the SEC

68.    As set forth above, FUQI and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiffs

and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, pray for judgment as follows:

A.     Declaring this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiffs as Lead Plaintiffs and certifying Plaintiffs as proper Class Representatives and Plaintiffs' counsel as Lead Counsel;

B.     Awarding Plaintiffs and the other members of the Class compensatory damages as a result of Defendants' wrongs alleged herein, including interest thereon;

C.     Awarding Plaintiffs and the other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

D.     Granting Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all issues so triable.

Dated: April 7, 2010

WEISS & LURIE

By: _____

Joseph H. Weiss
Mark D. Smilow
WEISS & LURIE
551 Fifth Avenue
New York, New York 10176
(212) 682-3025
(212) 682-3010 (Fax)

Jules Brody
STULL STULL & BRODY
6 East 45th Street
New York, New York 10017
(212) 687-7230
(212) 490-2022 (Fax)

Attorneys for Plaintiffs

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

SIDNEY AND ELAINE GLICK, each hereby certifies as follows:

1.    I have reviewed the complaint being filed on my behalf and on behalf of all others similarly situated and authorized its filing

2.    I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    To the best of my current knowledge, the following are all my transactions in Fuqi International, Inc. securities during the class period referenced in the complaint:

| Date | Purchased or Sold | No. of Shares | Price per Share |
|------|-------------------|---------------|-----------------|
| 11/05/2009 | P | 1,000 | $20.63 |

5.    I have not served as a class representative in a federal securities case in the last three years.

6.    I will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7    The matters stated in this certification are true to the best of my current knowledge, information and belief.

8.    I hereby certify, under penalty of perjury, that the foregoing is true and correct.

DATED:    March 26, 2010

_____
SIDNEY GLICK

_____
ELAINE GLICK